UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PETER MARCUS, MATT KOLTNOW, DIANNE BARTON-PAINE, AND OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFFS,<br><br>v.<br><br>THE AMERICAN CONTRACT BRIDGE LEAGUE,<br><br>DEFENDANT. | CIVIL ACTION NO. 17-11165-FDS |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT AS TO KENNETH VAN CLEVE**

Opt-In Plaintiff Kenneth Van Cleve ("Van Cleve") worked as an exempt Field Supervisor and Area Manager whose primary job duty was supervising twelve tournament directors for defendant The American Contract Bridge League ("ACBL" or the "Company"). Van Cleve claims he was misclassified and is owed overtime, but his job duties show that ACBL properly classified him as exempt under both the Fair Labor Standards Act's ("FLSA") executive and administrative exemptions. Accordingly, the Court should award summary judgment to ACBL and dismiss Van Cleve's claims.

If the Court declines to do so, the Court should then issue two rulings regarding damages. First, this dispute is governed by a two-year statute of limitations measured against the date Van Cleve filed his opt-in consent form because there is no evidence that ACBL willfully violated the FLSA. To the contrary, ACBL relied in good faith on legal advice stating that employees like Van Cleve were exempt under the FLSA. Second, if Van Cleve were found to be non-exempt, the

appropriate way to calculate damages is by adding 50% to his hourly pay – not 150% – for all hours exceeding 40 per week.

I.     BACKGROUND

   A.     **ACBL's Business Promoting, Growing and Sustaining the Game of Bridge**

ACBL is the governing body for contract bridge in North America. ACBL's Statement of Undisputed Material Facts ("SOF") ¶ 1. For a summary of ACBL's business, the job duties involved in directing bridge tournaments and acting as a director-in-charge, and the various ACBL tournament director ranks, *see* Section I.A. of the Memorandum of Law in Support of ACBL's Motion for Summary Judgment as to Matt Koltnow (the "Koltnow Memorandum") (submitted herewith and incorporated by reference.)

   B.     **Van Cleve's Employment as Field Supervisor, Area Manager and Associate National Tournament Director**

Kenneth Van Cleve worked for ACBL as a Field Supervisor between April 24, 2016 (three years before he filed a consent to join this lawsuit) and March 23, 2017. SOF ¶ 248. In ACBL's organizational structure, Tournament Directors reported to Field Supervisors. SOF ¶ 48. As a Field Supervisor, Van Cleve was responsible for "the technical operation of all sanctioned tournament bridge play" and had four focus areas:  (1) tournament organizers; (2) workforce supervision; (3) tournament operations; and (4) executing the strategic direction of field operations. SOF ¶ 49. Van Cleve was responsible for assigning the DIC for sectional and regional tournaments, completing performance reviews for the Tournament Directors he supervised, hiring, firing and recruiting Tournament Directors, and otherwise observing, training and offering assistance to his direct reports. SOF ¶ 50. As a Field Supervisor, Van Cleve had approximately ten Tournament Directors who reported to him directly. SOF ¶ 250.

In January 2018, ACBL eliminated the Field Supervisor position. SOF ¶ 48. After that, Van

Cleve became an Area Manager. SOF ¶ 251. The job duties of the Field Supervisor and Area Manager positions are similar, although as an Area Manager, Van Cleve gained responsibility over more districts and performed more work, including special projects on behalf of ACBL. SOF ¶ 59.

On January 3, 2019, Van Cleve decided to step back from the Area Manager Position and assumed a new position as Associate National Tournament Director. SOF ¶ 254. The job duties of the Associate National Tournament Director are to: (i) train and mentor others in movement selection,[1] room and game setup, and fixes to the same; (ii) train and mentor others in evaluating and providing feedback on tournament schedules; (iii) manage large tournaments and associated staff; (iv) guide appeals and/or conduct committees, (v) train and mentor others in matters of convention and alert charts; and (vi) participate in drafting and updating ACBL tournament regulations. SOF ¶ 42. Van Cleve passed away on June 9, 2019. SOF ¶ 257.

### C. Van Cleve's Compensation as Field Supervisor, Area Manager, and Associate National Tournament Director.

Field Supervisors, Area Managers and Associate National Tournament Directors could go weeks without working a tournament and still collect their salary. SOF ¶ 73. In early 2014, ACBL asked legal counsel to evaluate the question of whether full-time TDs had been properly classified as exempt under the FLSA.[2] SOF ¶ 75. Based on this advice received from counsel, ACBL decided to continue classifying its full-time TDs as exempt. SOF ¶ 77. While most Tournament Directors transitioned to hourly non-exempt status in January 2017, Field Supervisors, who had different job duties and had a higher salary than most Tournament Directors, continued to be classified as salaried exempt to meet the executive and administrative employees, exemptions, and therefore, remained salaried and not eligible for overtime. SOF ¶ 79-80.

---

[1] Movement selection refers to the proper selection among myriad alternatives of the movement of players. SOF ¶ 42, n.3.

When Van Cleve accepted the newly created Area Manager position in January 2018, he received a raise, from $52,972.40, to $58,000.02. SOF ¶ 253. When he transitioned to full-time Associate National Tournament Director on January 3, 2019, his salary was $59,739.94, or $1,148.85 per week. SOF ¶¶ 254-55.

### D. Procedural History

Van Cleve filed a consent to join this Action on April 24, 2019.[3] Doc. Nos. 1, 49-1.

## II. ARGUMENT

### A. Van Cleve's Positions as Field Supervisor and Area Manager Satisfy the Executive Exemption.

Van Cleve's overtime claim fails at the outset because he was exempt as Field Manager and Area Manager under the FLSA's executive exemption. "The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the" criteria for the relevant exemption. 29 C.F.R. § 541.2. To qualify as an exempt executive employee, the employee must: (1) be compensated on a salary basis of not less than $455 per week, or $684 per week after January 1, 2020[4]; (2) have a primary duty involving "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; (3) customarily and regularly direct the work of two or more other employees[5]; and (4) have the authority to hire or fire other employees or make suggestions and recommendations as to the hiring, firing, advancement or promotion or any other change of status of other employees which are given particular weight. 29 C.F.R. § 541.100. As explained below, Van Cleve's job duties in the two positions he held within

---

[3] The FLSA operates with a two- or three-year "look back" from the date an employee files a claim. As explained below, Van Cleve's claim is based on the date he filed his consent. 29 U.S.C. § 255(a).
[4]     29 C.F.R. § 541.200(a)(1) (2020).
[5]     To meet this prong, the employee must customarily and regularly direct the work of two or more full-time employees or their equivalent. 29 C.F.R. § 541.104.

4

the statute of limitations fall squarely within this exemption.

        1.     *ACBL Paid Van Cleve a Salary of at Least $455 Per Week.*

First, there is no dispute that Van Cleve earned a salary of at least $455 per week, and Van Cleve received this guaranteed salary regardless of whether or not he worked during any particular workweek. SOF ¶ 256. Thus, the salary basis requirement is met.

        2.     *In Both of His Positions, Van Cleve's Primary Duty Was Management.*

Second, Van Cleve's primary duty involved management. The DOL regulations define "management" to include activities such as "interviewing, selecting and training" employees; "setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used;" apportioning work among employees; "determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures." 29 C.F.R. § 541.102.

The term "primary duty" means "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700. The focus is on "the character of the employee's job as a whole," with the following factors to be considered:

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.*

Van Cleve's employment with ACBL easily fits within this framework. One of the three "Key Role[s]" identified in the Field Supervisor job description is "Workforce Supervision," which includes the following: (i) "[r]ecruit, lead, motivate and evaluate a team of field staff," and (ii) "[a]dminister long-range workforce planning (staffing) goals." SOF ¶ 51. As a Field Supervisor, Van Cleve was responsible for hiring and firing, which are quintessential management functions. *See, e.g.*, SOF ¶ 52. In addition, Van Cleve cannot dispute that he helped manage a "customarily recognized department or subdivision" – *i.e.*, ACBL's Field Operations Department. *See, e.g.*, SOF ¶ 55. Furthermore, Van Cleve remained in a position with a primary duty of management when he became an Area Manager, as the Area Manager position included the Field Supervisor job duties with added responsibility, e.g., a larger territory. *See* SOF ¶ 59.

Van Cleve may argue that he is nonexempt because he performed certain nonexempt tasks that were non-managerial and/or routine in nature. Even if Van Cleve performed *some* non-managerial tasks as a Field Supervisor, however, there is no genuine dispute that the "character of [his] job as a whole" was management. *Cf.* 29 C.F.R. § 541.700, 29 C.F.R. § 541.700(b) ("Time alone … is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt duties."). Indeed, courts have repeatedly upheld employees' status as exempt under the FLSA when their essential function in the organization is management, even when they perform far beyond 50% of their job duties on non-managerial tasks.[6] Importantly, Van Cleve could manage other employees concurrently with any non-

---

[6]*See, e.g.*, *Soehnle v. Hess Corp.*, 399 F. Appx. 749, 751-752 (3d Cir. 2010) (sole gas station manager found exempt despite spending 85 percent of her time on nonexempt tasks); *Moody v. Family Dollar Stores, Inc.*, No. 3:08-cv-1935, 2014 U.S. Dist. LEXIS 49961, *27-28 (W.D.N.C. Apr. 8, 2014) (summary judgment granted to employer despite manager's claim of spending majority of time on nonexempt tasks where she had discretion to determine what tasks to perform and admitted to running the store and engaging in other managerial duties); *Scott v. SSP Am., Inc.*, No. 09-CV-4399, 2011 WL 1204406, *10-11 (E.D.N.Y. Mar. 29, 2011) (summary judgment for defendant granted despite plaintiff's claim to have spent 90 percent of her time on nonexempt tasks).

managerial tasks he needed to perform and worked free from any direct supervision. *See, e.g., In re Family Dollar FLSA Litig.,* 637 F.3d 508, 516 (4th Cir. 2011) ("Thus, while [plaintiff] unloaded freight or swept the floors, she was also the manager, and no one else was directly supervising her work."). In short, there is no genuine dispute that Van Cleve's primary duty was management.

3. *Van Cleve Supervised Two or More Employees.*

Third, Van Cleve customarily and regularly directed two or more employees. In fact, as noted above, he supervised ten TDs as Field Supervisor and two TDs as Area Manager. SOF ¶¶ 250, 252.

4. *Van Cleve Had Authority to Hire and Fire.*

Finally, like other Field Supervisors and Area Managers, Van Cleve had the authority to hire and fire. SOF ¶ 249. In short, Van Cleve was exempt from overtime under the executive exemption, and his claims should be dismissed accordingly.

**B.     Van Cleve's Positions Also Satisfy the Administrative Exemption.**

Van Cleve's positions as Field Supervisor, Area Manager and Associate National Tournament Director also qualify under the FLSA's administrative exemption, which applies when an employee (a) receives a salary of at least $455 per week (or $684 per week after January 1, 2020); (b) has a primary duty performing "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (c) has a primary duty that includes the "exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). Van Cleve's duties as Field Supervisor and Area Manager satisfy this test.

1. *ACBL Paid Van Cleve a Salary of at Least $455 Per Week.*

As noted above (*supra* at 6), Van Cleve's positions satisfy the salary basis test.

        2.    *Van Cleve's Primary Duty Included Non-Manual Work Directly Related to ACBL's General Business Operations.*

Van Cleve's job duties also satisfy the second prong of the administrative exemption. DOL regulations define the phrase "directly related to the management or general business operations" as "assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). As set forth in Section II.B.2. of the Koltnow Memorandum (incorporated by reference), courts have interpreted positions akin to a referee as exempt under the FLSA's administrative exemption because when they involve, among other duties, mediating and solving problems for customers, managing game pace, observing and enforcing game rules and liaising with tournament sponsors. *See Allen v. Harrah's Entm't Inc.*, No. 2:04 cv 128, 2006 WL 3513857, at *1-2 (N.D. Ind. Dec. 4, 2006); *Fetrow-Fix v. Harrah's Entm't, Inc.*, No. 2:10-CV-00560-RLH, 2011 WL 5827199, at *8-9 (D. Nev. Nov. 18, 2011); *Mutch v. PGA Tour, Inc.*, No. 3:04-cv-97-J-25TEM, 2007 WL 9718940 (M.D. Fla. Mar. 30, 2007).

Van Cleve's positions as Field Supervisor, Area Manager and Associate National Tournament Director present an even more compelling case for applying the administrative exemption than in the cases cited above. Van Cleve's duties involved the interpretation and implementation of game rules; managing the flow and pace of the game; resolving player disputes; determining how to reward or discipline players; and setting up games, including evaluating and marking the playing space. SOF ¶ 60. These duties go to the core of ACBL's general business operations, and to its very reason for existing: to grow and sustain the game of bridge and serve the bridge-related interest of its members. Van Cleve's position was not at all akin to work "on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). Rather, his positions required the consistent and undisputed exercise of administrative discretion aimed at managing the entire tournament process, from drafting rules and

regulations to overseeing the appeals process to training, mentoring, and evaluating other tournament directors. SOF ¶ 43, 49, 54, 60. In short, there is no genuine dispute of material fact as to the primacy of Van Cleve's administrative duties or their importance to the management of ACBL and its customers. Thus, Van Cleve's job duties satisfy the second prong of the administrative exemption.

### 3. *Van Cleve Exercised Discretion and Independent Judgment as to Significant Matters.*

Finally, Van Cleve's position involved the exercise of discretion and independent judgment as to matters of significance. Discretion and independent judgment "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). Factors to consider for this requirement include, but are not limited to, whether the employee has authority to interpret or implement management policies or operating practices; whether the employee represents the company in handling complaints; whether the employee carries out major assignments in conducting business operations; and whether the employee performs work that affects business operations to a substantial degree. 29 C.F.R. § 541.202(b).

It is beyond dispute that Van Cleve exercised discretion and independent judgement as to matters of significance. In addition to the independent judgment he employed with respect to his duties when serving as a tournament director, as Field Supervisor and Area Manager, Van Cleve had discretion to (i) hire and fire other employees, (ii) assign DICs (who were themselves responsible for selecting and supervising staff) to tournaments, (iii) write annual performance reviews, and (iv) decide appeals made by players about a TD's ruling in particular cases. SOF ¶ 61. In his 2017 and 2018 annual performance evaluation as an Area Manager, his manager observed:

9

- In 2017, Ken excelled at providing positive feedback to member of his team and clearly understands that all parts of the ACBL are a team effort. Moving forward, Ken will re-double his effort to establish clear and measurable goals for the Mentors in his area. (2017 Performance Evaluation)

- Under the Investigative/Analytical Data Gathering section: Ken performs these skills well and frequently coaches others on best practices.

- As with judgement, Ken is careful to understand a situation before he takes action. Part of the Manager role is to develop and motivate his team members. He routinely sees their work product and is able to take corrective as well as congratulatory feedback. (2018 Performance Evaluation)

- Ken freely shares his perspective when participating in Manager meetings and his discussions with Tournament Chairs. (2018 Performance Evaluation)

SOF ¶ 258.

Whether he was serving as DIC at tournaments or coaching others on how to improve their directing skills, Van Cleve cannot credibly dispute that these job duties involved discretion and independent judgment as to matters of significance.

### C. Van Cleve's Claims are Barred to the Extent that He Seeks Damages for More than Two Years Before He Filed a Consent to Join this Action.

#### 1. *The Statute of Limitations Deadline Is Measured Against the Date Van Cleve Filed His Opt-In Consent Form.*

Regardless of Van Cleve's exempt status – which is a complete bar to recovery for the reasons set forth above – the Court should rule that Van Cleve's claims are barred to the extent that they fall outside the two years preceding the date on which he filed an FLSA consent form. An action for unpaid overtime must be commenced within two years after the cause of action accrued, or within three years if the cause of action arises out of a willful violation. 29 U.S.C. § 255(a). Under 29 U.S.C. § 256, for an opt-in plaintiff like Van Cleve, the statute of limitations is measured backward in time from "the date []he files written consent with the court to opt-in." *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 373 (E.D.N.Y. 2008) (citing 29 U.S.C.

§ 256(b)). The consent-filing deadline is strictly construed and allows for exceptions only when there have been "extraordinary circumstances beyond a plaintiff's control" or "affirmative misconduct" by the employer – none of which is present here. *Pike v. New Generation Donuts, LLC*, No. CV 12-12226-FDS, 2016 WL 707361, *5 (D. Mass. Feb. 20, 2016). Here, Van Cleve filed his opt-in consent form on April 24, 2019 (Doc. No. 49-1); thus, his claims are limited to the period beginning **April 24, 2017** (or on April 24, 2016 if he can establish a willful violation of the FLSA).

        2.    *Van Cleve Cannot Establish a Willful Violation of the FLSA.*

As explained in Section II.C. of the Koltnow Memorandum (incorporated herein by reference), there is no evidence that ACBL committed a willful violation of the FLSA. To establish willfulness for the purpose of extending the applicable limitations period, a plaintiff must prove that the employer knew it was acting in violation of the FLSA or acted in reckless disregard as to whether it was in violation of the Act. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 132-35 (1988).[7] The undisputed evidence establishes that Van Cleve cannot make such a showing. To the contrary, the record shows that ACBL took active steps to ascertain the dictates of the FLSA and then acted to comply with them. Thus, Van Cleve cannot recover for more than two years before he filed a consent to join this action (29 U.S.C. § 255(a)).

    **D.**    **Even if Van Cleve Were to Prevail, He Would Be Entitled to an Extra 50% - not 150% - for All Hours Worked In Excess of 40 in Each Workweek.**

As also explained in Section II.D. the Koltnow Memorandum (which is incorporated herein by reference), Van Cleve's recovery in this matter, if he were to prevail, is limited to an additional

---

[7] As the *McLaughlin* Court further explained: If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful under … the standard we set forth. If an employer acts unreasonably, but not recklessly in determining its legal obligation, then … is should not be [considered willful] under [*Trans World Airlines v. Thurston,* 469 U.S. 111 (1985)] or the identical standard we approve today." 486 U.S. at 135, n.13.

50% of his regular rate – not 150% – because, at all times relevant to his claims, he worked variable hours in exchange for a fixed salary and understood that the salary compensated him for all hours worked. SOF ¶ 74.

### III.   CONCLUSION

For all the foregoing reasons, ACBL respectfully requests that the Court grant its motion for summary judgment and dismiss Van Cleve's claims in their entirety. In the alternative, ACBL requests a ruling that (a) the statute of limitations applicable to Van Cleve's claim is limited to two years, and (b) the fluctuating workweek method is the correct way to calculate Van Cleve's overtime damages.

Respectfully submitted,

THE AMERICAN CONTRACT BRIDGE LEAGUE INC.

By its attorneys,


/s/ *Melissa L. McDonagh*
Melissa L. McDonagh (BBO NO. 569023)
Francis J. Bingham (BBO NO. 682502)
LITTLER MENDELSON, P.C.
One International Place
Suite 2700
Boston, MA  02110
Phone:  617.378.6000
Fax:  617.737.0052
mmcdonagh@littler.com
fbingham@littler.com

<div style="display:flex;justify-content:space-between;">

May 11, 2020

Paul E. Prather (admitted *Pro Hac Vice*)
LITTLER MENDELSON, P.C.
3725 Champion Hills Drive
Suite 3000
Memphis, TN  38125
Phone:  901.795.6695
Fax:  901.271.7189
pprather@littler.com

</div>

**CERTIFICATE OF SERVICE**

I, Melissa L. McDonagh, hereby certify that on this 11th day of May 2020, the foregoing document was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

/s/ *Melissa L. McDonagh*
Melissa L. McDonagh